**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JONAH CHUNG, individually and on**
**behalf of all others similarly situated**                                 **PLAINTIFF**

   **v.**     **CASE NO. 5:16-CV-5354**

**TYSON FOODS, INC.; DONNIE SMITH;**
**and DENNIS LEATHERBY**                                 **DEFENDANTS**


**WILLIAM HUSER, individually and on**
**behalf of all others similarly situated**                                 **PLAINTIFF**

   **v.**     **CASE NO. 5:16-CV-5371**

**TYSON FOODS, INC.; DONNIE SMITH;**
**and DENNIS LEATHERBY**                                 **DEFENDANTS**


**PATRICIA LALONDE, individually and on**
**behalf of all others similarly situated**                                 **PLAINTIFF**

   **v.**     **CASE NO. 5:16-CV-5362**

**TYSON FOODS, INC.; DONNIE SMITH;**
**and DENNIS LEATHERBY**                                 **DEFENDANTS**


**HAROLD VOELLINGER, individually and on**
**behalf of all others similarly situated**                                 **PLAINTIFF**

   **v.**     **CASE NO. 5:16-CV-5340**

**TYSON FOODS, INC.; DONNIE SMITH;**
**and DENNIS LEATHERBY**                                 **DEFENDANTS**

1

## OPINION & ORDER

Currently before the Court are motions to consolidate, appoint lead plaintiffs, and approve lead counsel filed in the four cases captioned above. For the reasons stated herein, the Court **CONSOLIDATES** cases 16-cv-5354, 16-cv-5371, 16-cv-5362, and 16-cv-5340; **APPOINTS** as lead plaintiffs Employees' Retirement System of the State of Hawaii ("Hawaii ERS") and Blue Sky[1]; and **APPROVES** as lead counsel Hawaii ERS's and Blue Sky's choice of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz").

### I. BACKGROUND

Plaintiffs in these cases were all shareholders of Tyson Foods, Inc. ("Tyson") during the time period from November 23, 2015 to November 18, 2016 (the "class period").[2] Tyson is a publicly traded corporation headquartered in Springdale, Arkansas that specializes in producing chicken, beef, and pork products. Donnie Smith served as the Chief Executive Officer of Tyson from November of 2009 through June 13, 2016. Dennis Leatherby has been the Chief Financial Officer of Tyson since June of 2008. The allegations made by Plaintiffs in each suit are materially identical for purposes of resolving the pending motions, and require only a broad overview.

Plaintiffs allege that Defendants violated the Securities Exchange Act of 1934 by making certain misleading representations, statements, and material omissions in

---

[1] Blue Sky refers to the following related funds: Stichting Blue Sky Global Equity Active Low Volatility Fund; and Stichting Blue Sky Active Large Cap Equity USA Fund.

[2] All four of the cases allege a class period that begins on November 23, 2015. Of the four cases, *Voellinger*, 16-5340, has the longest class period, extending to November 18, 2016.

Tyson's Securities Exchange Commission ("SEC") filings, and elsewhere. These alleged misrepresentations, in turn, supposedly caused investors to incur substantial losses after the price of Tyson's stock fell significantly. More specifically, beginning with Tyson's November 23, 2015 SEC annual report, and continuing with its quarterly reports through August 8, 2016, Defendants made certain representations about Tyson's financial condition, competition, and operations. Defendants also made alleged misrepresentations on conference calls with investors during this same time. Those statements, according to plaintiffs, characterized the food industry as being intensely competitive. They also attributed increased margins in Tyson's chicken segment to certain operational changes made by the company.

On September 2, 2016, a company named Maplevale Farms, Inc. filed a class action complaint against Tyson and several other chicken producers in the Northern District of Illinois. See Maplevale Farms, Inc. v. Koch Foods, Inc., et al., No. 16-cv-08637 (N.D. Ill.) (Dkt. No. 1). The complaint details a price-fixing conspiracy in the broiler chicken[3] industry, whereby the industry coordinated to decrease production and correspondingly increase margins. Following the Maplevale suit, eight other class action complaints were filed against Tyson and other poultry companies.

On October 7, 2016, an analyst named Pivotal Research downgraded Tyson's stock from "Hold" to "Sell," based on the allegations of price manipulation contained in the Maplevale litigation. In response, shares of Tyson fell $6.63, or 8.91%, to close at $67.75 on October 7. As of that day, shares of Tyson had decreased by $8.69, or 11.37%, since Maplevale filed its class action complaint.

---

[3] Broiler chickens are chickens raised specifically for meat production.

3

Two of the cases currently before the Court, *Huser*, 16-cv-5371, and *Chung*, 16-cv-5354, were filed on October 17, 2016, in the Central District of California and the Southern District of New York, respectively. Plaintiff's counsel in both cases published notice of the action, as required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A), on that same date. On November 28, 2016, *Voellinger*, 16-cv-5340, was filed in this Court, and four days later, on December 2, 2016, *Lalonde*, 16-cv-5362, was filed in the Southern District of Ohio. *Huser*, *Chung*, and *Lalonde* have all since been transferred to this Court.

On December 16, 2016, the following parties filed motions for appointment as lead plaintiff, approval of lead counsel, and consolidation of the cases:[4]

- Hawaii ERS and Blue Sky;[5]
- John Schodowski and Lewis Miller;[6] and
- Patricia Lalonde.[7]

As the deadline for moving to be appointed as lead plaintiff has now passed, *see* 15 U.S.C. § 78u-4(a)(3)(A)(i), these motions are ripe for decision. After setting forth the legal principles relevant to these motions, the Court will first determine whether to consolidate the actions, and then will turn to the appointment of lead plaintiffs and counsel.

---

[4] In addition to the below-listed motions, Doc. 24 in *Chung*, 16-cv-5354, is styled on the docket as if it is a motion to appoint Jonah Chung as lead plaintiff. However, the motion is actually to appoint Schodowski and Miller as lead plaintiffs.

[5] That Motion appears at *Chung*, 16-cv-5354 (Doc. 28); *Huser*, 16-cv-5371 (Doc. 27); *Lalonde*, 16-cv-5362 (Doc. 10); and *Voellinger*, 16-cv-5340 (Doc. 14).

[6] That Motion appears at *Huser*, 16-cv-5371 (Doc. 26), and *Chung*, 16-cv-5354 (Doc. 24).

[7] That Motion appears at *Huser*, 16-cv-5371 (Doc. 23).

## II. LEGAL PRINCIPLES

The provisions of the PSLRA codified at 15 U.S.C. § 78u-4 apply in "each private action arising under [Chapter 2B of Title 15] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The PSLRA, in relevant part, sets forth certain procedural instructions for class-action plaintiffs and the courts before which they appear. Within 20 days of filing suit, the law requires plaintiffs to publish notice advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period." *Id.* at (a)(3)(A)(i)(I). The notice must also advise that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.* at (a)(3)(A)(i)(II). When multiple actions on behalf of a class "asserting substantially the same claim or claims" are filed, only the plaintiff "in the first filed action" is required to publish notice of the suit. *Id.* at (a)(3)(A)(ii); *see also Turner v. ShengdaTech, Inc.*, 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011) (finding that the PSLRA does not require publication of a new notice when a subsequent complaint alleging a longer class period is filed, and listing cases finding the same); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 503 (S.D. Fla. 2003) (same).[8]

In deciding which proposed lead plaintiff(s) to appoint, the Court must appoint "the member or members" of the purported class that it finds to be "the most adequate

---

[8] *But see In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (considering the proposed lead plaintiffs' financial loss during the more narrow noticed class period, rather than the longer unnoticed period, in deciding who to appoint as lead plaintiff). Ultimately, the Court need not decide whether it would technically be proper for the Court to only consider the more narrow originally-noticed class period, *Chung*, 16-cv-5354, Docs. 29-5, 29-6, as doing so would make no difference to the outcome of the pending motions.

plaintiff." *Id.* at (a)(3)(B)(i). The PLSRA creates a presumption that the most adequate plaintiff is "the person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* at (a)(3)(B)(iii)(I). This presumption may be rebutted only "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at (a)(3)(B)(iii)(II). The "most adequate plaintiff" must also, "subject to the approval of the court, select and retain counsel to represent the class." *Id.* at (a)(3)(B)(v).

Courts generally have "90 days after the date on which a notice is published" to appoint a lead plaintiff. *Id.* at (a)(3)(B)(i). However, where a motion to consolidate has been filed, the court "shall not" appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." *Id.* at (a)(3)(B)(ii). Pursuant to Federal Rule of Civil Procedure 42, "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."

## III. DISCUSSION

The PSLRA instructs the Court to decide the question of whether it should consolidate these actions before turning to appointment of a lead plaintiff. 15 U.S.C. § (a)(3)(B)(ii). As mentioned above, the Court may consolidate the actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a). As also mentioned above, in

Section I, the allegations made in the four actions before the Court are materially identical. Each suit alleges violations of Section 10(b) of the Exchange Act, SEC Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act.[9] These alleged violations are premised on much the same statements made in annual and quarterly SEC filings, as well as other public comments. For these reasons, the Court easily concludes that common questions of law and fact permeate the four actions, and that they should be consolidated to preserve the parties' and the Court's time and resources.

Next, the Court turns to the issue of appointing a lead plaintiff, or group of lead plaintiffs. The first step in making this determination is identifying the presumptive most adequate plaintiff. The Court makes this determination based on the three prongs of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As to the first prong, all three proposed lead plaintiff groups either filed a complaint or made a motion in response to a notice of the suit. Looking to the second prong, the Court finds that the Hawaii ERS and Blue Sky plaintiff group has, by far, the largest financial interest in the relief sought by the class. Combined, the group incurred an alleged $2,925,150.66 loss calculated on a FIFO (first in, first out) basis, and an alleged $2,877,901.82 loss calculated on a LIFO (last in, first out) basis. *Chung*, 16-cv-5354, Doc. 29-3. These amounts dwarf the Schodowski and Miller group's alleged $26,281.00 loss, *Chung*, 16-cv-5354, Doc. 26-4, and Lalonde's alleged $43,604.00 loss, *Huser*, 16-cv-5371, Doc. 25-3.

The Court does note that, while some courts have approved of the practice, others have expressed skepticism about the propriety of combining unrelated plaintiffs into a

---

[9] *Chung*, 16-cv-5354 (Doc. 5, pp. 12-16); *Huser*, 16-cv-5371 (Doc. 1, pp. 11-15); *Lalonde*, 16-cv-5362 (Doc. 1, pp. 15-19); *Voellinger*, 16-cv-5340 (Doc. 1, pp. 23-25).

lead-plaintiff group for the purpose of increasing the group's financial interest. *Compare In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 118–19 (E.D.N.Y. 2012) (approving the pairing of unrelated plaintiffs and collecting cases approving of the same), *and In re Nw. Corp. Sec. Litig.*, 299 F. Supp. 2d 997, 1006 (D.S.D. 2003) (quoting *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216 (D.D.C. 1999) for the proposition that "[t]he text of the PSLRA does not limit the composition of a 'group of persons' to those only with a pre-litigation relationship"), *with In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) ("Although the PSLRA expressly permits the Court to appoint a 'group of persons' to serve as lead plaintiff, many courts, including this one, are skeptical of such arrangements when they are the product of an artificial grouping designed merely to qualify as lead plaintiff under the PSLRA."). This skepticism leads courts to "require proposed lead plaintiff 'groups' to demonstrate their ability to function as a cohesive and independent unit to protect the interests of the class." *In re Petrobas Sec. Litig.*, 104 F. Supp. 3d at 622. The Court finds that, to the extent such groups warrant judicial skepticism, Hawaii ERS and Blue Sky have demonstrated that they can work cohesively and protect the interests of the class. *See Chung*, 16-cv-5354, Doc. 29-4, ¶¶ 9-11 (discussing the actions that Hawaii ERS and Blue Sky have taken together in preparation for this litigation). Moreover, both Hawaii ERS and Blue Sky would, independently, have a greater financial interest in this litigation than the other proposed lead plaintiffs. Therefore, even if they were paired—at least in part—for the purpose of qualifying as lead plaintiffs, the Court does not believe the concerns normally associated with such a pairing are as significant in this case.

Turning now to the third prong, the Court finds that Hawaii ERS and Blue Sky have made a *prima facie* showing of typicality and adequacy under Federal Rule of Civil

8

Procedure 23. *See* Fed. R. Civ. P. 23(a)(3), (4); *Reese v. Bahash*, 248 F.R.D. 58, 62 (D.D.C. 2008) ("Significantly, although Rule 23(a) includes four requirements . . . the presumptive lead plaintiff need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." (quotation omitted)). The typicality requirement is satisfied "when each class member makes similar legal arguments to prove the defendant's liability." *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 2008 WL 5233106, at *2 (E.D. Mo. Dec. 12, 2008). In *MEMC*, the class consisted of those who "purchased [the defendant's] securities during the class period at inflated prices and suffered damages as a result." *Id.* This described exactly the injury alleged by the proposed lead plaintiff, who accordingly satisfied Rule 23's typicality requirement. *Id.* In the instant case, the legal arguments made by Hawaii ERS and Blue Sky—that defendants violated the Securities Exchange Act by making misleading statements that inflated Tyson's stock price and caused them damages—are identical to those of the purported class. For that reason, Hawaii ERS and Blue Sky have made a *prima facie* showing that they satisfy Rule 23's typicality requirement.

"In determining adequacy of representation, the Court makes a two-fold inquiry to determine whether: 1) the class representatives have common interests with the members of the class, and 2) whether the class representatives will vigorously prosecute the interest of the class through qualified counsel." *Bradford v. Union Pac. R.R. Co.*, 2007 WL 2893650, at *7 (W.D. Ark. Sept. 28, 2007).[10] As is obvious from this two-prong standard, adequacy "is tied to both [Rule 23's] commonality and typicality" requirements, and in PSLRA cases, it is tied to the Court's obligation to approve of a lead plaintiff's

_____

[10] The Hon. Harry F. Barnes.

9

choice of counsel. *Id.* The Court has already explained that Hawaii ERS's and Blue Sky's interest align with, and are typical of, the class of plaintiffs in this case. And, the Court will explain below that counsel selected by Hawaii ERS and Blue Sky is "qualified." *Id.* Hawaii ERS and Blue Sky also appear, at this early juncture in the litigation, to be working with their selected counsel to ensure that prosecution of the case is both efficient and effective. *See Chung*, 16-cv-5354, Doc. 29-4 (outlining the interactions between the proposed lead plaintiffs and their counsel). Therefore, Hawaii ERS and Blue Sky have made a *prima facie* showing that they satisfy Rule 23's adequacy requirement.

Having met the three prongs of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), Hawaii ERS and Blue Sky are entitled to a presumption that they are the most adequate plaintiffs. Since none of the other proposed lead plaintiffs have offered anything to even attempt to rebut this presumption, the Court finds that Hawaii ERS and Blue Sky are, indeed, the most adequate plaintiffs, and appoints them as lead plaintiffs.

Lastly, the Court must decide whether to approve of Hawaii ERS's and Blue Sky's choice of Bernstein Litowitz as lead counsel. The Court finds that Bernstein Litowitz is well qualified to serve as lead counsel in this case. The firm has previously served as lead counsel in class actions that have resulted in recoveries of hundreds of millions of dollars for aggrieved classes. *See Voellinger*, 16-cv-5340, Doc. 15, pp. 15-16. The specific attorneys who appear to be heading up this case for Bernstein Litowitz are both experienced in class action securities litigation. *See Chung*, 16-cv-5354, Doc. 29-7, pp. 20-21, 32-33. And, Bernstein Litowitz has selected a local "Liaison Counsel" who regularly practices in front of this Court. For these reasons, the Court approves Hawaii ERS's and Blue Sky's choice of Bernstein Litowitz as lead counsel.

## IV. CONCLUSION

For the reasons stated herein, the Court **ORDERS**:

- That cases 16-cv-5354; 16-cv-5371; 16-cv-5362; and 16-cv-5340 are **CONSOLIDATED** under Case No. 16-cv-5340;

- That the consolidated action shall bear the following caption:

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE TYSON FOODS, INC.**<br>**SECURITIES LITIGATION** | \| <br> \| | **Case No. 5:16-cv-05340** |

- That Hawaii ERS and Blue Sky are **APPOINTED** as lead plaintiffs; and

- That Hawaii ERS's and Blue Sky's choice of Bernstein Litowitz as lead counsel is **APPROVED**.

**IT IS SO ORDERED** on this 25th day of January, 2017.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE